## ROBERTS v. INDUSTRIAL COMMISSION et al.

No. 6097. Decided August 15, 1939. (93 P. 2d 494.)

*H. L. Mulliner* and *H. H. Halliday*, both of Salt Lake City, for plaintiff.

*Joseph Chez*, Atty. Gen., and *A. N. Ferro* and *F. F. Dremann*, both of Salt Lake City, for defendants.

PRATT, Justice.

Ira M. Elder, a sheepshearer, made application for unemployment compensation. He named Frank E. Roberts, plaintiff herein, as his employer. The latter refused to make the required employer's report. A hearing was had before an appeal tribunal. The decision was adverse to the plaintiff. The appeal examiner held that Roberts was an employer subject to the Unemployment Compensation law; that Elder was an employee of Roberts; and that Elder's services were not agricultural labor, therefore not exempt from the law. Roberts sought an appeal to the Industrial Commission. That Commission denied his application. Such denial in effect affirmed the decision of the appeal tribunal. The case is before us upon Writ of Review.

The Unemployment Compensation law of this State applicable to this case is found in Chapter 1, Special Session Laws of Utah 1936, as amended by Chapter 43, Laws of Utah 1937. We are not concerned with subsequent amendments. Hereafter we shall refer simply to sections of the law without quoting the title.

The transcript of the testimony in this case is silent upon the question of whether Roberts was an employer as defined in Section 19 (i) (1). That Section reads:

"(i) 'Employer' means:

"(1) Any employing unit which for some portion of a day, but not necessarily simultaneously, in each of twenty different weeks, whether or not such weeks are or were consecutive, within either the current or the preceding calendar year, has or had in employment four or more individuals, irrespective of whether the same individuals are or were employed in each such day."

Apparently it was thought that so long as evidence upon that question was on file in the office of the Industrial Commission, in the form of reports by Roberts as a hotel proprietor, it was unnecessary to introduce those reports in evidence; that they could be "judicially noticed" ■ and attached to the record. If such was the thought, it was an error. Each record of trial under this law should be complete in and of itself. Each element necessary to sustain an order by the tribunal or commission, under this law, should be supported by testimony, exhibits, or stipulation, introduced at the hearing. The rule is no different than that in industrial accidents. The rule in the latter cases may be found in *Spencer* v. *Industrial Commission et al.*, 81 Utah 511, 20 P. 2d 618. The effect of failure to apply this rule is illustrated by this Roberts case. Counsel for Roberts objects to the decision upon the ground that there is no proof that Roberts is such an employer—and as a matter of fact there is no such proof. It has been assumed from other records. If properly before us, we could pass upon the weight of the evidence in determining that question.

The main issue in this case is not so much a question of interpretation of the terms of the law, as a question of the identity of the employer. If we find that Roberts was the employer of Elder, then we are met with the question of whether or not Elder's services were exempt as agricultural labor.

Was the contract of employment in this case between Roberts and Elder, or between the sheepmen and Elder? The facts are these: ■

One Heaton owned a shearing corral at Watson, Utah. Roberts owned certain overhead machinery used in running sheep shears and combs. They entered into a contract whereby Roberts paid Heaton 1½c per head for sheep sheared at the corral. Heaton maintained a booking arrangement wherein sheepmen registered for the use of the corral. The sheepmen rented the corral from Roberts and paid him 6c per head for its use, for board for the shearers and for the use of Roberts' machinery in running the shears and combs. The shearers furnished their own shears and combs. Roberts or his brother would act as grinder, and sharpen the tools. The grinder was considered a foreman who, regardless of whether he actually employed the men himself or not, did the hiring and discharging. There was little or no contact between the sheepmen and the shearers. The sheepmen brought their sheep to the corral and accepted the services of the shearer present in each pen regardless of who he was. If they became dissatisfied with any shearer, they notified the grinder who discharged the man. This, however, was a very infrequent case as the shearers were experienced. They worked at a prevailing wage of 12½c per head. There was little direction of them, apparently each shearer being desirous of doing his best and as much as he could. If a shearer desired to leave, he settled up with the sheepmen, and did so. It was usually arranged to have someone present to replace him. There was nothing against the sheepmen sending shearers to the corral. Corral help were paid by the sheepmen in 1938 but by Roberts in 1937.

Prior to 1938, Roberts had been contracting with the sheepmen to shear their sheep. He would employ the shearers and would pay them. The sheepmen paid him not only the 6c referred to above, but the prevailing shearers' wage. As a result of the enactment of the unemployment law, Roberts concluded that he would no longer take the responsibility

of an employer. Thus in 1938—the time of the employment in controversy—he made no such contracts with the sheepmen. This is admitted by Elder.

As there had been little or no contact between the sheepmen and the shearers, the former looked to Roberts to supply their demands for shearers; and the latter looked to Roberts for such jobs as might be open. Roberts accommodated both, but received no compensation from either for doing so; nor did Roberts limit the jobs for the shearers to those in which he was personally interested. He sent them other places as well.

In April, 1938, shearing was undertaken at the Watson corral. Roberts' machinery was used, and Roberts received the 6c per head. His brother acted as grinder most of the time. Roberts sent shearers out there. Among them was Elder. Roberts maintains that he told Elder that the sheepmen were the employers this time. This is denied by Elder. Testimony was given by other shearers in substantiation of both Roberts and Elder. Some of the sheepmen who sheared that year testified that they were the employers, and presented evidence that they had paid the shearers direct, including Elder. No sheepman testified against this fact. Elder and two others, however, maintained that Roberts was the employer. Many of the questions asked called for legal conclusions; but we have ignored this fact, as we believe it would not affect our conclusion one way or another. The evidence is all one way. Roberts was not the employer of Elder. In order to hold that there is substantial evidence justifying a conclusion that Roberts was the employer, we must give weight to a suspicion that he who desires to relieve himself of the responsibility of employing others is guilty of a selfish anti-social idea that justifies our believing that he did not in reality abandon the idea of employing others. In other words, to so hold, we must attribute to Roberts and the sheepmen (as the latter have accepted the employer status) a fraudulent idea based solely upon the fact that they failed to enter into contracts in 1938, as they

had before. That they did not enter into such contracts is undisputed. That they had a perfect right to refrain from such contracts is unquestionable. The evidence does not indicate that Roberts was accepting benefits as an employer and trying to shirk the responsibilities of such employment.

Suppose Roberts and the sheepmen were so astute as to reason thus: Now if Roberts remains as employer it may be that the courts will hold that the shearers' services are not agricultural labor; but if the sheepmen assume the role of employer, the courts may hold otherwise. Upon such reasoning they change the relationship of all concerned. Can it be said that the new contracts are a nullity because founded upon selfish desires? The question answers itself.

What about the claim of exemption as agricultural labor? This question is far more interesting than the other, though now, as the result of our ruling above, it is of less importance to this case. Good arguments can be given both ways as illustrated by the opposing authorities cited in the briefs of counsel. One's sense of fairness inclines to the belief that if "A" gathers a group of men together and employs them to travel from farm to farm with him, and for a consideration to him, relieve the farmers of much of their drudgery, that that little traveling unit is as much a business concern as an auditing company in the city, and the employees of that traveling unit should receive the benefits of the Unemployment Compensation law. But is not that a question for the Legislature? The Legislature has said that "agricultural labor" is exempt. Section 19 (j) (6) (4). Is this not a definition of the kind of work done, and not of for whom it is done? For a similar principle see: *Jones et al.* v. *Industrial Commission,* 55 Utah 489, 187 P. 833.

For the reasons given, the judgment of the Industrial Commission should be reversed. The case is remanded for the action of the Commission in conformity with this opinion and with Section 6 (i) of the Unemployment Compensation Law of this State.

McDONOUGH, J., concurs.

MOFFAT, Chief Justice.

I concur in the opinion of Mr. Justice PRATT. I also concur with Mr. Justice LARSON, upon the matter of procedure.

LARSON, Justice.

I concur in what is said in the opinion of Mr. Justice PRATT, but I have some doubts as to whether this cause is properly before us. In this proceeding the matter was referred in the first instance, not to the deputy designated by Subdivision (b) of Section 6 of Chapter 1, Laws of Utah, 1936, Special Session, as amended by Chapter 43, Laws of Utah, 1937, but directly to the Appeal Tribunal provided by Subdivision (d) of Section 6 of the Act as amended. In this case the Appeal Tribunal consisted of only one person, and he sat as the original determinator of the facts. Being himself the Appeal Tribunal, there was no Appeal Tribunal to review his findings or conclusions. And the Industrial Commission to whom, by the Act, an appeal lies from the Appeal Tribunal, refused to entertain or permit an appeal. Under the Act this court reviews the decision of the Commission, and not of the lesser tribunals or investigators. It would seem, therefore, that the action of the Industrial Commission refusing to permit an appeal is the only matter that could properly be here for review. And I think the Commission was wrong in that ruling. For this reason, in addition to those given by Mr. Justice PRATT, I concur in the order of reversal.

WOLFE, Justice (concurring in results).

I agree with the prevailing opinion that there is no evidence before this court that Roberts is an employer as defined under Section 19 (i) (1) of the Unemployment Compensation Act. It is necessary that evidence to this effect be introduced at the hearing unless the status of employer is admitted by the one against whom it is asserted. In this case Roberts denied that he was an employer under Section 19 (i)

(1), and therefore the party asserting that he was an employer was under the duty of introducing evidence to that effect.

I also agree with the result reached by the opinion of the court to the effect that Elder was not the employee of Roberts, but I do so on slightly different ground. I think the evidence is insufficient to show an employment relationship existing between Roberts and Elder which would entitle Elder to unemployment compensation under the act. Or to put it another way, the Industrial Commission, through its appeal examiner, should have determined from the evidence that Elder was not the employee of Roberts so as to entitle him to benefits under the act. In the brief submitted by the Industrial Commission it is argued that the facts "Clearly Show that Elder Was Performing Services for the Plaintiff for Wages and Under a Contract of Hire." However, the evidence does not show that whatever services were being performed by Elder were being performed for the plaintiff. The evidence is sufficient to show some connection between Roberts and Elder, but it is insufficient to show that Roberts was the employer of Elder. Both Roberts and Elder owned machinery used for shearing sheep. Roberts owned the power machinery and Elder, as a shearer, owned the clippers and blades with which the actual shearing was done. Unless the two were combined it would be impossible for either to make use of his equipment. Under such a situation it would have been possible for Roberts to have employed Elder and others to work for him, using his equipment and shearing sheep which he might have contracted for. In fact, the evidence shows that this had been done in the past, which is not disputed by Roberts. But it is disputed, and the evidence fails to show, that such a relationship existed during 1938.

For the above reason the ruling of the Industrial Commission, which amounted to an affirmance of the findings of the appeal examiner, should be reversed.

However, there are certain statements contained in the prevailing opinion with which I cannot agree. The opinion states that the grinder (who would be Roberts or his agent in this case) "was considered a foreman who, regardless of whether he actually employed the men himself, or not, *did the hiring and discharging.*" (Italics added.) While there is slight evidence that any discharging would be done through the grinder, there is certainly no evidence to show that the grinder ever *hired* the shearers. If the evidence did show that Roberts hired the shearers, it would be quite persuasive that he was their employer, unless it was clearly shown that he did it as an agent for another.

After reciting some evidence to the effect that Roberts was the employer of Elder, the opinion goes on to state that the "evidence is all one way." Although the evidence is insufficient to establish that Roberts was the employer of Elder, it is certainly not all one way.

With respect to the conclusion that Elder was not the employee of Roberts, I think the prevailing opinion goes too far. It indicates that if, under the evidence, the applicant Elder was not the employee of Roberts, he must then have been the employee of the various sheepmen who had their sheep sheared at the corral. The opinion then goes on to answer the question as to whether the work performed by Elder was agricultural labor. But even though the evidence is not sufficient to show that Elder was the employee of Roberts, it does not necessarily follow that he must have been the employee of the sheepmen; and this court should not extend its decision to cover more than the situation existing between the two parties—Elder and Roberts—and what the relationship was to each other as disclosed by the evidence.

The opinion asks the question: "Was the contract of employment in this case between Roberts and Elder, or between the sheepmen and Elder?" I think this unanswerable from the evidence in this case, and certainly not a question which this court need pass on. The Court should conclude from

the evidence whether the finding that Roberts was the employer of Elder can be sustained. If not, the matter is ended.