## LOGAN-CACHE KNITTING MILLS v. INDUSTRIAL COMMISSION et al.

No. 6130.   Decided May 4, 1940.   (102 P. 2d 495.)

1

*M. C. Harris,* of Logan, for plaintiff.

*Joseph Chez,* Atty. Gen., *S. D. Huffaker,* Asst. Atty. Gen., and *A. N. Ferro,* of Salt Lake City, for dependants.

MOFFAT, Chief Justice.

This case is before us on certiorari, pursuant to the statute, to determine the validity of a decision under the Utah Unemployment Compensation Law, Chapter 43, Laws Utah 1937. On the 30th day of January, 1939, the appeal tribunal entered its decision wherein it was determined that Charles F. Hull, the claimant, was, under the statute, in the "employment" of the Logan-Cache Knitting Mills and the Logan-Cache Knitting Mills was "directed to pay into the Utah Unemployment Compensation Fund the necessary contributions on wages earned by claimant while in the company's employ. Benefits will be allowed accordingly."

From this decision, the plaintiff company appealed to the Industrial Commission. Without hearing by the Industrial Commission, the decision of the Appeal Tribunal was affirmed.

Two questions are submitted and argued by plaintiff. We state them as plaintiff and defendants state them.

Plaintiff's statement:

1. "Was Mr. Hull, the claimant, at the time of his application for benefits unemployed and entitled to benefits under Section 4, Chapter 43, Laws of Utah, 1937?"

2. "During the previous year was he employed by the plaintiff under the provisions of Section 19 of the Utah Unemployment Compensation Law, Chapter 43, Laws of Utah, 1937?"

Defendants' statement:

1. "The claimant at the filing of his claim for benefits was eligible for compensation under the provisions of the Unemployment Compensation Law."

2. "The Industrial Commission was authorized by the terms of the unemployment compensation law to conduct proceedings to determine the validity of the claimant's application for benefits. The proceedings conducted before the Appeal Tribunal and the Industrial Commission on the claim were proper and fully in accord with the provisions of the law."

The foregoing statements are the interrogative and the affirmative, with some variations in scope of the same propositions.

The Logan-Cache Knitting Mills is a Utah corporation engaged in the knitting of woolen and other goods in Logan, Utah. The company operates a knitting factory where it knits wool and other materials into blankets, ladies' dresses and other varieties of knit goods. Charles F. Hull, claimant, was engaged in selling the products. There were two written contracts entered into between the claimant and the company. One was dated August 9, 1937, and the other March 3, 1938. It is the position of both the claimant and the plaintiff that the contract, be it what may, has never been terminated and that the claimant may continue the exercise of the rights anl privileges accorded him under the contract whenever he sees fit. The claimant maintains his relationship with the plaintiff company has not changed. Plaintiff agrees and the record establishes this fact. The commission found the contract "had never been formally terminated."

At the time claimant's application for unemployment benefits was filed and for several months prior thereto, the

claimant had not been performing under the contract with the company, any service which brought him remuneration.

Briefly state, the case presents three questions for determination: (1) Was claimant ineligible for benefits because claimant failed to prove he was not in the class of claimants excluded from benefits by the provisions of subsections (a) and (c) of Section 5, Chapter 1, Laws Utah 1936, Special Session; (2) Was the service performed by the claimant within the definition of the term "Employment" as defined in subsection (2) of Section 19(j), Laws Utah 1937; and (3) Was plaintiff shown to be an "employer" within the definition set forth in Section 19 (i), Laws Utah 1937?

(1) Claimant is not exercising the rights and privileges granted him under his contract with the company. There is no "cause" given why the rights and privileges are not being exercised or why there has been no remuneration. The company still offers the claimant everything granted him by his contract with the company. The claimant is ineligible for benefits for the period set forth in subsection (a) of Section 5 when it is not shown by evidence that he left his employment for good cause and the claimant will remain ineligible for benefits so long as he fails, without good cause, to accept suitable work when offered him by his employer, Section 5 (c).

(2) Subsection (2) of Section 19 (j), Laws Utah 1937, reads:

"The term 'employment' shall include an individual's entire service, performed within or both within and without this state if—

"(a) the service is localized in this state; or

"(b) the service is not localized in any state but some of the service is performed in this state and

"(I) the base of operations, or, if there is no base of operations, then the place from which such service is directed or controlled, is in this state; or

"(II) the base of operations or place from which such service is directed or controlled is not in any state in which some part of the service is performed but the individual's residence is in this state."

It was stipulated by counsel

"That the question of whether or not, claimant, Charles F. Hull, performed services within the State of Utah is not an issue in the above proceedings and that therefore, that portion of the briefs submitted in the above entitled matter relating to such issue is waived and need not be considered by the court in arriving at its decision."

That is a fact which must be proved to bring claimant within the act. It is a necessary element to make a case. See *Crowell* v. *Benson*, 285 U. S. 22, 52 S. Ct. 285, 76 L. Ed. 598.

The service of the claimant was not "localized in this state" as required by subparagraph (a) nor could it be said that "some of the service is performed in this state" as required by subparagraph (b). There is nothing in the evidence to show that any of the service was performed in this state. All services mentioned in the record are affirmatively shown to have been performed outside of the state.

(3) We have examined the record carefully to ascertain whether the company was an "employing unit" under the statute. Aside from the forty or fifty persons bearing the same relation to the company as claimant, we have found no reference to "any employing unit which for some portion of a day, but not necessarily simultaneously, in each of twenty different weeks, whether or not such weeks are or were consecutive, within either the current or preceding calendar year, has or had in employment four or more individuals." Until such facts are shown, the employing unit is not brought within the provisions of the act. Section 19 (i) (1). *Roberts* v. *Industrial Commission*, 97 Utah 434, 93 P. 2d 494.

The order of the commission is vacated.

LARSON, Justice (concurring).

I concur. I also concur in the statement of Mr. Justice PRATT that without findings from proper evidence that the employer was an "employer" as defined by Section 19 (i) (1) of the Act, and that the claimant was or had been in "employment" as defined in the Act,—that is rendered service for wages or under a contract of hire,—any orders of the Industrial Commission are null and void. Until these facts are established the Commission or its agents have no authority to award benefits. I expressly reserve commitment as to whether or not any other facts are jurisdictional until they come before the court in a proper case. They are not before us here.

McDONOUGH, Justice (concurring).

I concur in the result on the second ground stated in the opinion of the court. I think that where the record is before us, as here, and the finding of the Commission is not specific with respect to a fact necessary to support an award and the record discloses the ineligibility for benefits of the applicant, the award should be set aside, despite the stipulation that we need not consider that portion of plaintiff's brief devoted to the absence of proof of such fact.

WOLFE, Justice (dissenting in part, concurring in part).

The first proposition on which the decision is based seems to be that the claimant must give a "cause" for not working under the contract, whatever its nature may be, so long as it is not terminated. Evidently in this case the claimant terminated his employment without expressly terminating the contract. A contract, of course, may be terminated by conduct even in the face of provisions specifying that it may be terminated by notice. But on the assumption that the contract was still in existence and hence constituted a refuge to which claimant might return, I cannot concur in the conclusions in reference to this first proposition. The opinion seems to cast upon the claimant the burden of proving a reason why he is not working under his contract. I do not read anything in the statute which places upon the claim-

ant the burden to show that his failure to take work was for good cause or that the work was not suitable work. The Commission is charged with the duty of determining whether the applicant has met all the conditions which entitle him to benefits and to determine whether he is disqualified for any part of the period. It is well at the outset to keep in mind that in this law we are not, as in disability compensation statutes, dealing with a pecuniary obligation of one party to another—a matter judicial in its nature—but are dealing with the administration of a fund and the question of who shall or shall not participate. This function is administrative. No burden of proof as used in a case of plaintiff vs. defendant is required. The Commission must from its investigation be satisfied that applicant is entitled to participate. It may place upon him the duty of producing certain data or information but after that is done it does not ask itself whether he has carried the "burden of proof" but whether it is satisfied that he is or is not entitled to participate in the fund.

I now come to the substantive part of conclusion No. 1 contained in the court's opinion. Assuming for the benefit of this question that the contract under consideration is such as to give rise to a relationship under section 19 (j) (1) and is not excluded by section 19 (j) (5) or 19 (j) (6), I am not ready to agree that a standing offer to give the applicant employment prolongs the ineligible period prior to receiving compensation beyond the week in which the applicant refused to take the work when so directed by the Commission, plus any further total period of ineligibility from one to five weeks as the Commission may determine. Sec. 5 (c), Laws Utah 1936, Sp. Sess., c. 1. I do not think the failure to accept the offer, if it is kept open, adds automatically as part of the ineligible period each successive week in which applicant fails to take the work, granted the work is still open to him. Sec. 5 (c) specifies that the ineligible period shall attach, not when an individual refuses without good cause to accept the offer, but when he refuses

suitable work when offered such "by an employer." The language of the section is also susceptible of the construction that in addition to failing to accept suitable work when offered he must be further directed by the Commission to take it before he can be penalized. But to avoid the task of construing an ambiguity, I shall assume for this question that the words "when so directed by the commission" refer only to the failure to return to "his customary self-employment (if any)." And he can only be directed to accept work that is suitable. If the court's construction is correct, certainly the entire 16 weeks compensable period would be automatically used up in penal ineligibility so long as the offer remained open, and the Commission would not have to determine whether any longer time than the week in which he refused work should be added to it. Such provision would then be of value only in case the applicant refused the offer and the offer no longer remained open. It may have been advisable to draft the law so that as long as an offer for work which the Commission decided applicant should take remained open, he should not obtain any compensation, but we are not legislators. I think Mr. Justice PRATT makes a good argument for what the law ought to be, but I am inclined to think that under the statute the maximum ineligibility penalty any applicant may suffer is limited to the week in which he refused to accept the offer of work, plus five additional weeks if so determined by the Commission. His compensation period may be deferred if not shortened for refusal to accept the offer when directed by the Commission to take the work.

At least if he refused the offer after being directed to take the work and such direction were an element, and he suffered the penalty of that week in which the refusal occurred, plus an additional period up to five weeks added by the Commission it would seem that before any further penalty could be applied he would again have to be directed to take the work. On the state of this record, I cannot see that we can ourselves apply the penalty by a construction

of law which seems to ignore the conditions on which the penalty applies, to wit: (1) An offer of work; (2) that the work is suitable; (3) that applicant refused to take it; (4) that the refusal is without good cause; and perhaps (5) that applicant was directed to take it by the Commission. If a contract not terminated by the applicant or the employee is to be construed as an "offer" for work, elements (2), (3), (4) and perhaps (5) are lacking. They must be determined by the Commission to exist. How can we by a sweep of the pen read them out of the statute or refuse to recognize them as conditions to be found before the ineligible period comes into being? The opinion holds that if no "cause" is given why the rights and privileges under the contract are not availed of, the applicant is by law not entitled to benefits. But this is not the law set forth in the statute. The law is that the applicant shall not be entitled to benefits for the week in which he refused without good cause to take an *offer* of *suitable* work when so directed by the Commission, plus such additional time up to 5 weeks as the Commission shall determine. For the above reasons, I cannot concur with conclusion No. 1 of the opinion.

I concur in the result on the second ground stated in the opinion for the reasons set out in the opinion of Mr. Justice McDONOUGH.

I cannot agree with the third ground for the decision. It is there said:

"We have examined the record carefully to ascertain whether the company was an 'employing unit' under the statute. Aside from the forty or fifty persons bearing the same relation to the company as claimant, we have found no reference to 'any employing unit which for some portion of a day, but not necessarily simultaneously, in each of twenty different weeks, whether or not such weeks are or were consecutive, within either the current or preceding calendar year, has or had in employment four or more individuals.' Until such facts are shown, the employing unit is not brought within the provisions of the act. Section 19 (i) (1)."

An "employing unit" is, according to section 19 (e) of the Act of 1936 Sp. Sess., as amended by Chap. 43, Laws of

Utah 1937 (now § 19 (h), "any individual or type of organization * * * which has * * * one or more individuals performing *services* for it *within this state.*" (Italics added.) The definition requires that only one individual perform services for the employing unit in this state. Out of "employing unit" is carved a class of "employers" as defined by section 19 (i) (1). Such "employer" must have four or more individuals in his employment, but nothing is said about four or more employees whose services are localized within this state or who otherwise come, as far as locale of services is concerned, under section 19 (j) (2) (a) and (b). The individuals must bear the relationship of "employment" as defined by section 19 (j) (1), that is, must perform service for wages or under a contract of hire. Nothing is said about four or more of such employees having to perform such services within the State of Utah. In order to constitute an "employing unit" as defined by the Act, one individual must be performing services for the unit "within this state." I think under the evidence it may be assumed that the plaintiff has one person performing services for it within this State. This makes it an "employing unit," as defined by the Act. Whether it has four or more individuals "in employment" as employment is defined by section 19 (j) (1) depends not on whether such individuals meet the conditions of section 19 (j) (1) *and* section 19 (j) (2) but only whether they bear the relationship required by section 19 (j) (1). This will more clearly appear hereafter. If what is said above is correct the question of whether the plaintiff is an "employer" as defined by section 19 (i) (1) must be resolved by determining whether the applicant is in the relationship defined by section 19 (j) (1). If so, and there are 40 or more in this relationship, then plaintiff is an "employer" as defined by section 19 (i) (1). The opinion, in its treatment of the third ground for denying compensation, fails to follow through. It fails to resolve the point which is presented by the evidence. It first seemingly errs in confusing "employing unit" with "employer" and then fails to resolve the question on which

depends the status of "employer" by failing to conclude whether the applicant is in "employment." Since a majority of the court refuse to resolve this question, I cannot see any need for me to conclude as to what the evidence shows in this regard.

I shall, therefore, devote the remainder of this opinion to the matter of "jurisdictional facts" alluded to by Mr. Justice PRATT but actually unnecessary to be decided because under neither the second nor third grounds of the opinion is the question raised as to the *scope* of our review as to any fact jurisdictional or otherwise. And, as hereafter appears, the only practical purpose for making a separation between jurisdictional and non-jurisdictional facts lies in the manner or scope of the review of such facts. In one case we say we *weigh* the evidence to determine whether the Commission correctly assumed jurisdiction. In the other we only examine the record to see if there is evidence to support the findings of the Commission in regard thereto. Otherwise, classifying the facts as to type would be academic. In this, under the third ground of the opinion, if the writer had followed through, he would have been required to determine whether we should weigh the evidence to determine a preponderance for or against the relationship which would bring the applicant under section 19 (j) (1), and thus also the other 40 or 50 in the same class, or merely determine whether there was evidence to support the finding of the Commission. In many cases the facts are undisputed, hence so-called jurisdictional questions may be solely questions of law. We pass upon those in any case.

Mr. Justice PRATT has stated in his opinion that there are only "two jurisdictional facts essential to the granting of an award of benefits." We have held under the Workmen's Compensation Act, Rev. St. 1933, 42-1-1 et seq., that the question of whether an employer has 3 or more employees and the question of whether the applicant was in the employment are jurisdictional facts on which the Industrial Commission's power to make an award depends.

Under the Unemployment Compensation Act we may hold also that the question of whether the service relationship as compared to a non-service relationship, Sec. 19 (j) (1), and the question of whether the employing unit has four or more employees over a certain period of time, Sec. 19 (i) (1), are jurisdictional. But in the case of disability compensation the underlying thought is that those with less than 3 employees fall outside of the circle over which the act operates and those who are not in employment or those who are in domestic or agricultural employment fall outside of the sphere of its operation. No award can be made against an employer who does not have 3 or more employees, nor can an award be made in favor of one not employed. In the Unemployment Compensation Act we must draw the line at a different point. If the line between jurisdictional and non-jurisdictional facts is the same line that separates "contributors" from non-contributors we must draw such line through the fact configuration at a different point from what we do in Disability Compensation. In Unemployment Compensation the line which separates those who may be required to "contribute" a percentage of the wage of a particular applicant and those who may not, reaches other issues than those of the type of relationship and the designated employers. In order to separate those required to contribute from those not so required under the Unemployment Compensation Act, certainly an employer who met the definition of Sec. 19 (i) (1) and who was within the definition of a wage-payer for service under section 19 (j) (1) would *not* have to contribute if the services were not localized within the State unless the conditions of section 19 (j) (2) (b) were fulfilled. Furthermore, he would not have to contribute if he were a wage-payer for service but was excluded by section 19 (j) (5) (a), (b), and (c). Hence, if jurisdiction is held to the two issues mentioned by Mr. Justice PRATT, it will be coterminous with, but not analogous to jurisdictional facts as held in reference to disability compensation. I am unable to know by what tests Mr. Justice PRATT has distinguished a jurisdictional from a non-jur-

isdictional fact in reference to Unemployment Compensation. It may be that the line between jurisdictional and non-jurisdictional facts is somewhat one of convenience. As before stated, it has little or no value except insofar as we weigh the evidence in the case of jurisdictional facts and do not do so as to non-jurisdictional facts. I am skeptical as to whether we were correct in holding under the Disability Compensation Act that we should *weigh the evidence* whenever the question of the relationship of applicant or the number of employees is involved. Wisconsin found no difference in nature or quality of the fact of whether an applicant for disability compensation was or was not an employee and the fact of whether, granted he was an employee, he was injured in the employment, or whether if injured he was disabled, or if killed, whether he had dependents. In consequence it called all these facts jurisdictional and ended by refusing to weigh the evidence as to any. *General A. F. & L. Assur. Corp.* v. *Industrial Com.*, 223 Wis. 635, 271 N. W. 385. It may be well briefly to show how the various jurisdictions hold in regard to the question of when reviewing courts will or will not weigh the evidence on appeal from Industrial Commission cases. It was said in *Crowell* v. *Benson*, 285 U. S. 22, 52 S. Ct. 285, 290, 76 L. Ed. 598, that the appellate court will make "its own examination and determination of facts whenever that is deemed necessary to enforce a constitutional right properly asserted." The Supreme Court determined that questions of presence on navigable *waters and existence of master-servant relationship* were "jurisdictional" and hence could be raised for judicial determination de novo. But the Benson case is one which involves maritime jurisdiction which by the Constitution of the United States is given to the federal District Courts, and is thus complicated not only by the question of what are jurisdictional facts under a law granting jurisdiction, but whether the United States Employee's Compensation Commission could by its own finding in relation to jurisdiction, bind the federal District Court. Mr. Justice Hughes, writing the court's opinion, held that such questions as in-

toxication, wilful intent, amount of injury and consequences were for factual finality by the Commission, subject only to review to determine that its findings were supported by evidence. Several states including our own follow this division.

In the following cases it was held that questions on relationship of employer-employee, number of employees, etc., are "jurisdictional facts" on which the appellate court will "review and *weigh* the evidence certified in the record" to determine whether the Commission had jurisdiction. *Paul* v. *Ind. Com.*, 288 Ill. 532, 123 N. E. 541; *Donlon Bros.* v. *Ind. Acc. Com. of Cal.*, 173 Cal. 250, 159 P. 715; *Thede Bros.* v. *Ind. Com.*, 285 Ill. 483, 121 N. E. 172; *Hahnemann Hospital* v. *Ind. Board of Ill.*, 282 Ill. 316, 118 N. E. 767; *Uphoff* v. *Ind. Board of Ill.*, 271 Ill. 312, 111 N. E. 128, L. R. A. 1916E, 329, Ann. Cas. 1917D, 1. In these cases the court considered the evidence anew and determined what conclusion should have been reached on those facts and, on the basis of its conclusion, affirmed or reversed.

The Utah cases are to this effect: *Industrial Com.* v. *Evans*, 52 Utah 394, 174 P. 825; *Hardman* v. *Ind. Com.*, 60 Utah 203, 207 P. 460; *Angel* v. *Ind. Com.*, 64 Utah 105, 228 P. 509; *Norris* v. *Ind. Com.*, 90 Utah 256, 61 P. 2d 413; *Holt* v. *Ind. Com.*, 96 Utah 484, 87 P. 2d 686.

Most courts, however, have held that Commission findings of employer-employee relationship, number of employees, etc., are binding on the reviewing court unless there is an absence of substantial evidence in the record. *Hillen* v. *Ind. Acc. Com.*, 199 Cal. 577, 250 P. 570; *York Junction Trans. & Stor. Co.* v. *Ind. Acc. Com.*, 202 Cal. 517, 261 P. 704; *Index Mines Corp.* v. *Ind. Com.*, 82 Colo. 272, 259 P. 1036; *Federal Mining & Smelting Co.* v. *Thomas*, 99 Okl. 24, 225 P. 967; *Taylor* v. *Blackwell Lumber Co.*, 37 Idaho 707, 218 P. 356; *Oklahoma Pipe Line Co.* v. *Lindsey*, 113 Okl. 296, 241 P. 1092; *Franklin Coal & Coke Co.* v. *Ind. Com.*, 296 Ill. 329, 129 N. E. 811; *Cinofsky* v. *Ind. Com.*,

290 Ill. 521, 125 N. E. 286; *Norris Coal Co.* v. *Jackson*, 80 Ind. App. 423, 141 N. E. 227; *Beckford's Case*, 268 Mass. 221, 167 N. E. 284; *Hill's Case*, 268 Mass. 491, 167 N. E. 914; *Murphy* v. *Shipley*, 200 Iowa 857, 205 N. W. 497; *Belmonte* v. *Connor*, 263 Pa. 470, 106 A. 787; *Missouri Valley Bridge Co.* v. *State Ind. Com.*, 86 Okl. 209, 207 P. 562; *Kersey* v. *Conrad*, Mo. App., 30 S. W. 2d 167; *Riley* v. *Hunt*, 85 Ind. App. 647, 155 N. E. 523; *Root* v. *Shadbott & Middleton*, 195 Iowa 1225, 193 N. W. 634. The statement is common throughout these cases that the finding of the Commission on points, regarding which there is conflicting evidence, is conclusive and that the court is without power to review the evidence. Most of the cases were appealed because of a finding of employer-employee relationship but the courts held Commission findings on this point conclusive. It should be noted that there are holdings both ways in California and Illinois.

I think as a matter of policy the courts should not attempt to substitute their judgment for that of Commissions who gain experience by constant dealing with administration of the acts which created them. Certainly such bodies should become expert in making factual conclusions. For that reason I think the line between jurisdictional and non-jurisdictional facts should not be extended further than necessary to act as a justifiable check on the administrative tribunal and that the review should be almost altogether on questions of law. A further reason is that any extension of the scope of review puts additional burdens upon the courts which are already over-burdened. There seems to be no difference in nature or quality of the facts which must be found under section 19 (i) (1) and section 19 (j) (1) and those which must be found under other parts of Sec. 19. As stated above, all parts of Sec. 19 affect "contributions" whilst the facts to be found under Sec. 4 do not affect "contributions." Such was the real difference between jurisdictional and non-jurisdictional facts in disability compensation. If the relationship fell within the circle of operation of the act there was, as Mr. Justice Hughes stated in *Crowell* v. *Benson*, su-

pra, "coverage" even though the employee failed to obtain compensation because of wilful injury or intoxication or because the accident did not occur while he was engaged in the employment. If we are to preserve the analogy, practically all facts under the tests laid down by Sec. 19 would be jurisdictional whilst those to be found under Sec. 4 as regards eligibility would be non-jurisdictional, (excepting Sec. 4 (e) which again brings in the test of "wages for employment by employers") it being assumed that all the questions to be resolved by Sec. 19 have been resolved in applicant's favor before Sec. 4 (a), (b), (c), and (d) become applicable.

I am inclined to believe that jurisdiction under this Act consists of only three things: (1) Jurisdiction of the fund given to the Commission by the Act; (2) Jurisdiction of the application, and (3) Jurisdiction of the subject matter, that is, the question whether the applicant is entitled to participate in the fund. En route from the time of the filing of the application until the deciding of the question of whether or not he is entitled to participate in the fund, many questions of simple and composite nature arise. They may roughly be bracketed under Sec. 19 (which we shall call bracket No. 1) and under Sec. 4 (which we shall call bracket No. 2). Under Sec. 19 we have at least three hierarchies of inclusion-exclusion tests. Sec. 19 (i) (1) is an inclusion-exclusion test for the employer; Sec. 19 (j) (1) is an inclusion-exclusion test for the relationship; Sec. 19 (j) (2) (a) and (b) is an inclusion-exclusion test for services. But in any case the result is the same in that if any of the three works an exclusion, the applicant fails and the "contribution" as to *such applicant* is not collectible. These inclusion-exclusion tests under bracket No. 1 determine primarily whether the applicant may or may not recover. They also determine the fact upon which another may be required to "contribute" to the fund and therefore are res adjudicata in an action by the Tax Commission. See Secs. 9 (c) and 14, Chap. 1, Laws Utah 1936, Special Session, and Chap. 43, Laws Utah 1937. These applications were brought under

those laws and not the 1939 law. But in the proceeding to determine whether an applicant should participate in the fund, he will be "out" just as much if any of the composite facts in bracket No. 1 are found against him, as if any facts under bracket No. 2 are found against him. All along the line he must meet the inclusion conditions of every fact constituting the different hierarchies. For instance, on the relationship hierarchy—the first test comes under section 19 (j) (1): Was the applicant performing services for wages or under a contract of hire? Under this test it must be determined whether he falls under those contractual relationships which are in the non-service class, such as vendor-vendee or lessor-lessee relationship. If the applicant survives this test he must meet the next inclusion-exclusion test under this hierarchy, to wit: that of section 19 (j) (5), where if the Commission is satisfied that the conditions of the (a), (b) and (c) clauses concur, the applicant is eliminated from participation but until so satisfied, the applicant remains in to stand or fall by the other inclusion-exclusion tests. If his service is localized in the state but the conditions of section 19 (j) (2) (b) are not met, he is eliminated. Thus, each fact along the route to a final determination must be considered. Those under bracket No. 1 eliminate the applicant if as to him there is no "employment" or "employer," as defined by the Act. Those under bracket No. 2 eliminate him if, although employed as defined by the Act, he has not met other conditions of eligibility for participation. What is meant to be shown is that as to the applicant there is no difference in the nature or quality of the fact by which he is either in or out of the fund, hence the result of resolving any fact against him is to put him out. It would seem that in the entire process of determining the end fact of whether he is entitled to an award or not, we are always dealing, at least so far as the applicant is concerned, at each stage with a fact which resolved one way permits him to qualify, at least until the next test is reached, but if resolved the opposite way, disqualifies him entirely. Nothing is gained, as far as the applicant is con-

cerned, in stating that under bracket No. 1 we are dealing with jurisdictional facts, whilst under bracket No. 2 we are dealing with non-jurisdictional facts. The result, as far as the applicant is concerned, is the same. The facts either qualify or disqualify him. Hence, there is no more reason to weigh the facts under bracket No. 1 (Sec. 19) than those under bracket No. 2 (Sec. 4). And if there is to be drawn any line between jurisdictional and non-jurisdictional facts it logically would seem to come so as to make all the facts under bracket No. 1 jurisdictional and all those under bracket No. 2 (except those under Sec. 4 (e) which really fall under bracket No. 1) non-jurisdictional. That is a division, as above stated, equivalent to the line drawn by this court in the Disability Compensation Act.

I am inclined to accept the test of jurisdiction laid down in *Atwood* v. *Cox*, 88 Utah 437, 55 P. 2d 377. In that case it was said that if the court had jurisdiction of the person and had by law jurisdiction of the subject matter *in reference to which it was intended by the pleading to invoke jurisdiction,* it then had jurisdiction of the whole cause and could proceed regardless of erroneous factual conclusions, or legal holdings en route toward judgment. See concurring opinion in *Jeffries* v. *Third District Court,* 90 Utah 525, at page 532, 63 P. 2d 242, at page 246. It was there recognized that courts spoke of "excess of jurisdiction" when the courts stepped from their empowered course en route to the pronouncement of judgment. That case endeavored to lay down some tests for the determination of error in assuming jurisdiction and error within the framework of jurisdiction. It was admitted that at times the refinements were extremely subtle. See concurring opinion of the writer in *Olson* v. *District Court,* 93 Utah 145 at page 162, 71 P. 2d 529, at page 536, 112 A. L. R. 438.

As said in *Atwood* v. *Cox*, supra, illogical and arbitrary distinctions have been made for the purpose of squeezing into the jurisdictional framework facts not such because of the necessity of using certiorari and prohibition to halt an

action by a lower tribunal, which action, if permitted, would lead to consequences which could never be redressed by appeal or any other remedy. See concurring opinion *Nielson* v. *Schiller*, 92 Utah 137, at page 145, 66 P. 2d 365, at page 368. Jurisdiction literally means "to speak by warrant of law." In *Binderup* v. *Pathe Exchange*, 263 U. S. 291, at page 305, 44 S. Ct. 96, at page 98, 68 L. Ed. 308, the court, Mr. Justice Sutherland speaking, stated:

"Jurisdiction is the power to decide a justiciable controversy, and includes questions of law as well as of fact. A complaint, setting forth a substantial claim under a federal statute presents a case within the jurisdiction of the court as a federal court, and this jurisdiction cannot be made to stand or fall upon the way the court may chance to decide an issue as to the legal sufficiency of the facts alleged any more than upon the way it may decide as to the legal sufficiency of the facts proven."

If we apply these principles to the Unemployment Compensation Act, we find that by the law itself the Commission has jurisdiction of the fund. By the application filed it has jurisdiction of the person applying. What is the "subject matter" of which it has jurisdiction? I think it may well be argued that the subject matter is the question of whether the applicant should participate in the fund. That is the ultimate question which the application presents, provided it is sufficient to inform the Commission that applicant intends to claim a right to participate in the fund. An application for relief as to some wholly extraneous matter, unrelated to benefits, would not invoke the jurisdiction of the Commission. Providing, therefore, that the application is sufficient to show that applicant intends to ask the Commission to entertain the question of whether he is entitled to participate in the fund, the Commission has jurisdiction to speak by warrant of law in relation to that subject matter. It has jurisdiction to audit, hear and determine the claim. Can the fact that it erroneously determines that an alleged employer has four or more employees or that it erroneously finds either in law or in fact that the service relationship exists, unhorse it of jurisdiction to proceed and

find the *final* fact of whether the applicant is entitled to participate in the fund. It seems somewhat incongruous to state that the Commission has the power, yea, even the duty to determine whether an applicant is entitled to participate in the fund and after it determines that question which it is bound to do, for a reviewing court to hold that back along the route the Commission wrongly held in regard to some composite fact, at which time its jurisdiction ended; that it had jurisdiction at that point to hold only one way, to wit: that it did not have jurisdiction. Certainly, if it were an inferior court, having jurisdiction of the subject matter, that is power to hear and determine through the whole route to the final question, such jurisdiction would not "depend either upon the regularity of the exercise of that power or upon the rightfulness of the decisions made." *State* v. *Stobie,* 194 Mo. 14, 92 S. W. 191, at page 197. But, it may be said, an administrative tribunal, differing from a court of plenary jurisdiction, has limited jurisdiction and the right to speak by warrant of law is only within the limits set by the Act. This is true but it still leaves unsolved the question of what are the limits set. They must include the power to speak in reference to the subject matter in regard to which the Act makes it the duty of the Commission to speak. The real question then is what is that subject matter? Is it the question of whether the applicant is entitled to participate in the fund, or is it the question only of whether an applicant who has performed service as defined by the Act for wages for an employer as defined by Sec. 19 (i) (1), is entitled to participate in the fund? In the latter case, Sec. 19 denotes limits to jurisdiction *within* which lie the remaining questions. This is the view of Mr. Justice PRATT, except that he would pick out only portions of Sec. 19, to wit: Sec. 19 (i) (1) and 19 (j) (1), as marking the jurisdictional circle within or out of which a case falls. Such arbitrary division might, as said before, have some justification in our decisions in reference to workmen's compensation but that Act differs from the Unemployment Compensation Act in one very important and fundamental re-

spect. Disability compensation is an obligation decreed against an individual and not out of a fund. The employer is primarily liable. The insurance company is only his surety. The ultimate fact, therefore, to be found by the Commission is the liability of *one for a payment.* This is judicial in character. The ultimate fact to be found in case of Unemployment Compensation is not whether there is a money liability against a party but whether the applicant may participate in a fund. The latter falls under the designation of "Matters of Privilege" while the former comes under "Settlement of Controversies Between Individuals," in the able article by Prof. Ray A. Brown, 19 Minn. Law Review, 261, entitled "Administrative Commissions and the Judicial Power," reprinted in part in Selected Essays on Constitutional Law, Vol. 4, p. 384. The distinction may bear on the question of whether the "contributions" exacted under the Unemployment Compensation Act are a tax requiring them to come under the supervision and administration of our Tax Commission or part of a self-contained exercise of the police power not constitutionally required to be supervised or administrated by the Tax Commission. Or it may bear on the question whether, if a tax, the finding of the Industrial Commission as to facts on which "contribution" depends may not be res adjudicata as to those facts in a suit by the Tax Commission to collect the "contribution." Suffice it now to state that under the Workmen's Compensation Act the fact to be found being that of individual liability, it may well be that jurisdiction cannot extend to any who are by said Act excluded from the class to which liability to pay compensation applies, whilst in the case of determining whether one may participate in a fund already established, the jurisdiction of the Commission extends to the determination of *that* ultimate fact and the simple or composite facts which must be determined along the route to arrive at that determination are none of them jurisdictional. This appears somewhat plausible when it is appreciated that the employer under the Unemployment Compensation Act is not a necessary party to determine such finding. He is

a necessary party in order to make an award for disability compensation. The award in Disability Compensation operates on an individual. It has the effect of a judgment when a certified copy is filed in the office of the clerk of the District Court. But an award for Unemployment Compensation operates against the fund. No judgment for it may be obtained against any "contributor" to the fund. In view of the fact that the employer under the Unemployment Compensation Act may be subjected to "contributions" by the Tax Commission on a finding made by the Industrial Commission that he is an "employer" of the applicant subject to the Act, it may, in effect, put the employer in substantially the same position as is the employer in the Workmen's Compensation Act. True, the Industrial Commission cannot make an award against him which can be enforced as such, but when it decrees that an applicant is his "employee" entitled to benefits under the Act it amounts to a finding on which, if not overturned by appeal, the Tax Commission may found a judgment. I have included the above discussion in this opinion in order to show the difficulties we are confronted with in view of our holdings in respect to jurisdictional facts in the Disability Compensation cases. We may take one of three courses: (1) Hold that none of the facts to be found under Sec. 19 or Sec. 4 of the 1936 Law, as amended by the 1937 Legislature are jurisdictional and hence refuse to weigh the evidence as to any such questions. (2) Take the midway, though illogical position assumed by Mr. Justice PRATT. (3) Call *all* facts under bracket No. 1 (arising under Sec. 19) jurisdictional and weigh the evidence as to all such facts. While not necessary to be here decided but for the reasons above stated, I incline toward the first holding. My next choice would be holding No. 2 as suggested by Mr. Justice PRATT that only the facts raised by section 19 (i) (1) and 19 (j) (1) be held jurisdictional. With that I shall leave the matter until definite decision must be made.

PRATT, Justice (concurring in part, dissenting in part).

We have before us for decision, other unemployment compensation cases. Their issues are not alike, but there are certain fundamental questions raised applicable to all, even though not made an issue in each. These questions are so bound together that it is confusing to discuss each in a separate decision. For that reason I shall discuss my view of them here though they are not all raised as issues in this case. What I say should in no sense be taken as an opinion of any one or more of my worthy associates, nor as an indication of the probable outcome of any other case. My learned associates are acquainted with my views and understand that they are to be expressed here, rather than piecemeal. Hereafter, if the occasion arises, I shall merely refer to this opinion rather than to repeat it.

In this case, I concur in the solutions of the 1st and 3rd questions. As to question No. 1, it seems to me unquestionable that he who has available work may not refuse it, without a showing of good cause, and thereby make himself a beneficiary under the act. One of the purposes of the act is to overcome unemployment and it is as much the duty of the applicant to aid in that endeavor as it is that of the authorities to see that he gets benefits if entitled to them. The limitation of one to five weeks' deprivation of benefits for a refusal of work, Sec. 5 (c), has reference, in my opinion, to offers of employment that expire with their non-acceptance. A continuing offer should be treated as repeated offers postponing the initiation of the limitation period until the week in which the offer terminates with non-acceptance. My reasons for concurring with the solution of question 3 may be gathered from what follows immediately upon the matter of jurisdictional facts. With the solution of question No. 2, I do not agree for reasons that will appear therein as well.

In every case under this act, there are two jurisdictional facts essential to the granting of an award of benefits or the compelling of contributions. They are inseparable and indispensable to bringing the alleged employer-employee re-

lationship within the act. Without either, the commissions are powerless to legally make an award or to legally demand contributions based upon the alleged employment in question. Those facts are these: (1) The applicant was in employment as "employment" is defined in the act, Sec. 19 (j) (1); (2) that his employer was an "employer" as defined in the act, Sec. 19 (i) (1).

Not all unemployed are potential beneficiaries of the act; not all employers are potentially liable for contributions under the act. The sole employee of a corner grocer may prove that his employment was as defined in the act but he is not within the class covered by the act, for the reason that his employer was not within the class covered by the act. The corner grocer is not liable for contributions on account of an alleged employee without first a showing of the applicant's employment as defined and second a showing that he, the employer, was one as defined. A careful reading of Sections 4 (e), 3 (d), 7 (c), and 3 (f) (2), will disclose my reasons for making these statements. The maximum boundary of the classification of employer-employee relationships in the act is: An applicant's employment, as that word is defined, by an employer, as "employer" is defined. Those facts are fundamental and must be proved or stipulated and must be found to be true before the Commission may legally render judgment other than to deny its jurisdiction. Those facts are subject to court review as in any case where the power of the particular tribunal to act is questionable. The Commission can not, by an erroneous finding of fact, confer jurisdiction upon itself. The same principle is discussed in *Norris* v. *Industrial Commission*, 90 Utah 256, 61 P. 2d 413. A ruling by the Commission not supported by a record showing of these facts and a finding that they are true is contrary to law. No one is bound by what the Commission may have resting peacefully and undisclosed in its mind or in its office files.

But, those facts having been established and found to be true, the question of whether or not the particular employer-

employee relationship is one of a lesser group within the class which may or may not be excluded from benefits or liabilities under the act, is not jurisdictional. Such do I believe the facts under Sec. 19 (j) (2) to be, which were waived by stipulation in this case. We should accept the stipulation as to the facts involved in question No. 2.

In view of the inseparable character of the relationship of both the employee and the employer to the employer-employee classification covered by the Act, the Industrial Commission must of necessity in passing upon any application, determine the status of the employer under the act. If that determination is made after affording the employer notice and an opportunity to be heard, it should be binding upon him before the Tax Commission, or in a suit by the Tax Commission, where that relationship is an issue under this act. The two commissions are merely agencies for the enforcement of the Act. The employer-employee relationship or issue is of necessity the same regardless of which commission attempts the enforcement. It is not the case of different issues—the result of different parties to the suits or actions. If there is a triangle of interests here, it might be considered thus: employer-employee-public interests. The commissions are not interested except in their representative capacity—representative of the public.

The inseparable character of the relationship of the employer and the employee in determining the question of benefits or the question of contributions, makes it necessary that the findings of fact and the evidence in support thereof should show this relationship, and designate the parties. In other words, it is not sufficient to merely find employment as defined nor to merely find an employer as defined. Both must be found to bring either party within the act. The employer and employee should be designated. Neither party can be bound by symbolic designations such as have been used for the employer ("X company"). For the reasons just given I am of the opinion that all of these cases are fatally defective for lack of concrete findings and a

lack of finding that the employer is one subject to the act. They should be returned for correction from the evidence, if there is evidence supporting such findings, or for further proof if that evidence is missing. The awards should be set aside pending that determination. We cannot "judicially notice" the status of either the employer or the employee. Such failures in the findings make the decision a nullity so far as its use is concerned in a suit by the Tax Commission. This act contemplates the making of findings of fact as well as a decision. Sec. 6 (b), (c), (e), and (i).

It being necessary for the Commission to find the employer subject to the act, the question then arises as to a conflict between the constitutional power of the Tax Commission to administer the tax laws of the State, Art. XIII, Sec. 11 and the action of the Industrial Commission in determining the employer's status, as his status determines his liability for contributions. I dispose of that question in this manner:

In determining the purpose of an act of the Legislature we should consider it as a unit. It is not under the police power in one breath, and under the revenue power in the next, as the eye shifts from section to section. We should ask ourselves what led to its passage. Was it the need for additional money, or was it some other purpose such as the eradication or restriction of an evil? I am digging a ditch. To do so, I bought a shovel. Was my purpose in so acting merely the desire for the shovel? It might be humorous, but it is hardly sensible to say that I am going to dig the ditch as an excuse to get the shovel. Are we to say, then, that all these provisions referring to the public good and welfare, the employment stabilization, the reduction and prevention of unemployment (Sections 2, 11 (f) and 12) are merely creatures conceived as an excuse to raise revenue? It does not sound reasonable. To me, there is no question but that this act was passed under the police power of the state; and the compensation fund is merely the shovel used to dig the ditch. It is merely incidental to the purpose;

the desire for it is not the purpose. In *State* v. *Packer Corporation*, 77 Utah 500, 506, 297 P. 1013, 1015, Justice Folland for this court said:

"* * * The fact that a considerable revenue is raised and paid into the public treasury does not itself indicate that the act was passed as a revenue measure, nor destroy its character as a regulatory act passed in the exercise of the police power, where the object is to control, regulate, and restrict, rather than to encourage, the traffic.

* * * A police regulation presupposes a condition which, unless restricted, guarded, and controlled, will operate to public disadvantage. * * *"

This court is on record in that case as recognizing that because an act includes sections of a revenue character, it does not follow that the act must have been passed under the revenue powers of the state. The same is true of our holding in the case of *Carter* v. *Tax Commission*, 98 Utah 96, 96 P. 2d 727.

What, then, should we say of the constitutional amendment (Art. XIII, Sec. 11) placing in the hands of the State Tax Commission the administration of the tax laws of the State? I am sure the people, in adopting that amendment, had no thought in mind that they were placing in the hands of that Commission, the administration of legislation enacted pursuant to the police power of the state as well as that enacted under the revenue power, even though the raising of funds were contemplated by the former. There was no reason for such a thought upon their part. In the Senate *Journal* of the Special Session of the Legislature of 1930 is set out the background of the necessity for the amendment. It was the inequalities under the general tax laws, some of which arose as a result of lack of uniformity in the administration of those tax laws, that were sought to be corrected. (See page 39 of the Journal). Such questions were considered as property tax, income tax, intangible property tax, delinquencies, and a uniform interpretation and application of the tax laws by the officials of the various taxing units.

Under the Unemployment Compensation Law, we are not, in my opinion, met with any such constitutional question of conflict between the Tax Commission and the Industrial Commission. The former has only those duties specifically assigned to it by the Legislature. The general control of the act lies in the hands of the Industrial Commission. It is not a tax law.

If it be determined that this act is under the revenue power of this state, I do not believe that there is a conflict of duties between the two commissions; but I cannot agree that it is within that revenue power.