2013 COA 175

**FOUNDATION FOR HUMAN ENRICHMENT,**
Petitioner,

v.

**INDUSTRIAL CLAIM APPEALS OF-FICE of the State of Colorado; and Division of Unemployment Insurance,** Respondents.

Court of Appeals No. 12CA2326

Colorado Court of Appeals,
Div. III.

Announced December 19, 2013

Lapin Lapin, P.C., Theresa L. Corrada, Denver, Colorado, for Petitioner

John W. Suthers, Attorney General, Mary Karen Maldonado, Assistant Attorney General, Denver, Colorado, for Respondent Industrial Claim Appeals Office

No Appearance for Respondent Division of Unemployment Insurance

Opinion by JUDGE ROMÁN

¶ 1 In this unemployment compensation tax liability case, petitioner, Foundation for Human Enrichment (the Foundation), seeks review of a final order of the Industrial Claim Appeals Office (Panel). The issue on appeal is whether coordinator services performed by twenty-one individuals, who lived and worked out of state, for workshops offered by the Foundation, constituted covered "employment" for tax purposes under the Colorado Employment Security Act (CESA), sections 8–70–101 to 8–82–105, C.R.S.2013. The Panel concluded that the out-of-state coordinators were covered employees under the CESA and that the Foundation was responsible for paying unemployment compensation taxes for these individuals.

¶ 2 We conclude that respondent, the Division of Unemployment Insurance (Division), lacked statutory authority to impose tax liability against the Foundation with regard to the out-of-state coordinators. Consequently, we set aside the Panel's order and remand with instructions to reinstate the hearing officer's original decision determining that the out-of-state coordinators were not covered employees under the CESA for tax purposes.

I. Factual and Procedural Background

A. Tax Audit

¶ 3 The Foundation is a nonprofit organization based in Boulder, Colorado, that does outreach to victims of violence, war, and natural disasters. The out-of-state coordinators performed various administrative and clerical services for the Foundation in helping to organize workshops offered by the Foundation in out-of-state locations.

¶ 4 The Division conducted an audit of the Foundation and issued a notice of liability, finding that twenty-three workers, classified as coordinators, were in covered employment for purposes of the CESA. The Foundation appealed that decision.

B. Hearing Officer's Original Decision

¶ 5 Following a hearing, the hearing officer upheld the Division's ruling as to two workers who worked in Colorado. However, the hearing officer determined that twenty-one workers who lived and provided all their services to the Foundation out of state were not in covered employment for purposes of the CESA.

C. Panel's Initial Order

¶ 6 The Division appealed the hearing officer's ruling as to the twenty-one out-of-state coordinators to the Panel. The Panel determined that the out-of-state coordinators were in covered employment under the definition of employment in section 8–70–116, C.R.S. 2013, and set aside the hearing officer's decision concluding otherwise. The Panel remanded for findings under section 8–70–115(1)(b), C.R.S.2013, regarding whether the out-of-state coordinators were free from the Foundation's control and direction and whether they were customarily engaged in an independent business.

### D. Hearing Officer's Decision on Remand

¶ 7 On remand, the hearing officer found that the out-of-state coordinators were not customarily engaged in independent businesses providing event planning services. Thus, the hearing officer concluded, the coordinators were not independent contractors and they were in covered employment for purposes of the CESA.

### E. Panel's Final Order

¶ 8 The Foundation appealed that decision to the Panel. The Panel issued a final order affirming the hearing officer's decision.

¶ 9 In that order, the Panel upheld its prior determination that the out-of-state coordinators were in covered employment pursuant to section 8–70–116 because the coordinators both provided services and resided out of state. The Panel also rejected the Foundation's argument that section 8–70–117, C.R.S.2013, was applicable because none of the conditions set forth in that section had been satisfied.

¶ 10 The Panel agreed with the hearing officer's determination that the out-of-state coordinators were not independent contractors under section 8–70–115, C.R.S.2013, because they were not customarily engaged in independent businesses. The Panel also determined, although not specifically addressed by the hearing officer, that the undisputed evidence would support the conclusion that the out-of-state coordinators were subject to control and direction by the Foundation.

¶ 11 The Foundation then brought this appeal.

## II. Analysis

¶ 12 The Foundation contends that the Panel erred in determining that the out-of-state coordinators were in covered employment for purposes of the CESA. We conclude that the Panel's order must be set aside because the out-of-state coordinators' services to the Foundation were not "employment" under the CESA.

### A. Standard of Review

¶ 13 We may set aside the Panel's decision only if (1) the Panel acted without, or in excess of, its powers; (2) the decision was procured by fraud; (3) the findings of fact do not support the decision; or (4) the decision is erroneous as a matter of law. *See* § 8–74–107(6), C.R.S.2013; *Colo. Div. of Emp't & Training v. Parkview Episcopal Hosp.*, 725 P.2d 787, 790 (Colo.1986). Our review of an agency's interpretation of a statute is de novo. *Benuishis v. Indus. Claim Appeals Office*, 195 P.3d 1142, 1145 (Colo.App.2008).

¶ 14 In construing a statute, we ascertain and effectuate the General Assembly's intent by applying the plain meaning of the statutory language, giving consistent effect to all parts of a statute, and construing each provision in harmony with the overall statutory design. *In re Miranda*, 2012 CO 69, ¶ 9, 289 P.3d 957. Additionally, statutes "pertaining to the same subject matter are to be construed in pari materia to ascertain legislative intent and to avoid inconsistencies and absurdities." *Walgreen Co. v. Charnes*, 819 P.2d 1039, 1043 (Colo.1991).

### B. The Out–Of–State Coordinators' Services Were Not "Employment" Under the CESA

#### 1. "Employment" Under the CESA

¶ 15 Under the CESA, an "employer" must pay unemployment compensation premiums or taxes based on the amount of "wages for employment" paid to current employees and the amount of claims made by former employees. *See* §§ 8–76–101 to –103, C.R.S. 2013; *Colo. Div. of Emp't & Training v. Accord Human Res., Inc.*, 2012 CO 15, ¶ 12, 270 P.3d 985. "Employment," in turn, is defined in the CESA through a number of statutory provisions. *See* § 8–70–103(11), C.R.S.2013 (listing these provisions).

¶ 16 The CESA contains two statutes that address whether an individual's services are covered employment and the Division's respective authority to impose unemployment compensation taxes. *See* §§ 8–70–116, –117; *see also* § 8–76–101 (discussing when premiums shall accrue and become payable).

#### 2. Sections 8–70–116 and 8–70–117

¶ 17 Section 8–70–116, which is entitled "Employment—location of services," is geo-

graphically expansive and defines employment to include services "wherever performed within the United States" provided (a) "[t]he service is not covered under the unemployment compensation law of any other state" and (b) "the service is directed or controlled" from Colorado. § 8–70–116(1)(a)–(b), C.R.S.2013.

¶ 18 Section 8–70–117, which is entitled "Employment—base of operations," provides that a worker is in covered employment if one of four conditions exists: (1) the entire service of an individual is performed within this state; (2) the entire service of an individual is performed both within and without this state if the service is localized in this state; (3) the service is not localized in any state but some of the service is performed in this state and the base of operations or, if there is no base of operations, the place from which the service is directed or controlled, is in this state; (4) the base of operations or place from which the service is directed or controlled is not in any state in which some part of the service is performed but that the individual's residence is in this state. Section 8–70–117 then provides: "For purposes of this section, service shall be deemed to be localized within a state if the service is performed entirely within the state or if the service is performed both within and without the state but the service performed without the state is incidental to the individual's service within the state . . . ."

### 3. Historical Basis for Section 8–70–117

¶ 19 The test set forth in section 8–70–117 is based on a uniform definition of "employment" that was developed in the 1930s and eventually adopted by nearly every state. *See* Beverly Reyes, Note, *Telecommuters and Their Virtual Existence in the Unemployment World*, 33 Hofstra L.Rev. 785, 790 (2004) (hereinafter *Telecommuters* ) (stating that forty-six states and the District of Columbia have adopted the uniform definition); *Laub v. Indus. Claim Appeals Office*, 983 P.2d 815, 817–18 (Colo.App.1999) (noting that the uniform definition of employment was drafted in the 1930s); *see also St. Martin Evangelical Lutheran Church v. South Dakota*, 451 U.S. 772, 775 n.3, 101 S.Ct. 2142, 68 L.Ed.2d 612 (1981) ("All 50 States have employment security laws implementing the federal mandatory minimum standards of coverage."). This definition was intended to eliminate uncertainty with regard to which state's unemployment compensation laws would apply to the payment of benefits and assessment of taxes when a worker performed services for a single employer in a number of states. *See Laub*, 983 P.2d at 817–18; *Iverson Constr., Inc. v. Dep't of Emp't Servs.*, 449 N.W.2d 356, 359 (Iowa 1989).

¶ 20 The uniform definition is based on two principles. *See In re Mallia*, 86 N.E.2d 577, 580 (N.Y.1949); *Iverson*, 449 N.W.2d at 359. First, all employment of an individual should be allocated to one state and not divided among the several states in which the individual might perform services, and that one state should be solely responsible for paying benefits to the individual. *Mallia*, 86 N.E.2d at 580. Second, the state to which the individual's employment is allocated should be the one in which it is most likely that the individual will become unemployed and seek work. *Id.*

¶ 21 In determining which state will be allocated an individual's employment, the elements in the uniform definition have been interpreted by other jurisdictions as setting forth a four-part test which is to be applied in the following order: (1) the state where the claimant's provision of services is "localized;" (2) the state where the claimant's "base of operations" is located; (3) the state from which the claimant's services is directed or controlled; (4) the state where the claimant is a resident. *Iverson*, 449 N.W.2d at 359; *see also Telecommuters*, 33 Hofstra L.Rev. at 791.

### 4. Panel's Interpretation of Sections 8–70–116 and 8–70–117

¶ 22 The Panel interpreted sections 8–70–116 and 8–70–117 as alternate jurisdictional statutes and held that there was no requirement that the conditions in both statutes had to be met for jurisdiction to be established. The Panel concluded that section 8–70–117 was inapplicable to service provided entirely out of state. Examining section 8–70–116,

the Panel disagreed with the Foundation's argument that a coordinator's services were covered by the unemployment compensation laws of the state where the coordinator resided. The Panel noted that there was no indication that any other state had assumed jurisdiction over the services performed by the coordinators, demanded payment of taxes on those services, maintained an experience rating regarding the Foundation, or made a determination regarding a coordinator's employment. Thus, the Panel concluded that the out-of-state coordinators were in covered employment under section 8–70–116.

### 5. The Out–Of–State Coordinators' Services Were Covered by the Unemployment Laws of Another State

¶ 23 We agree with the Panel that section 8–70–117 is inapplicable to situations where the worker's services are performed entirely out of state. Section 8–70–117, by its own terms, applies only when the worker performs all his services in this state, performs a portion of his services in this state, or resides in this state. None of those circumstances is present here. Thus, as did the Panel, we must consider the applicability of section 8–70–116.

¶ 24 Section 8–70–116 includes as "employment" services of an employee "wherever performed within the United States" provided that the service is "not covered under the unemployment compensation law of any other state" and that the service is "directed or controlled" from this state. As structured, section 8–70–116 may apply in circumstances where section 8–70–117 does not, although that is probably exceedingly rare given the adoption of employment security laws by all fifty states. *See St. Martin,* 451 U.S. at 775 n.3, 101 S.Ct. 2142. And, contrary to the Foundation's assertion, we need not consider the criteria in section 8–70–117 when analyzing section 8–70–116. Section 8–70–116 does not expressly incorporate any of those criteria. Further, section 8–70–117, by prefacing certain definitional language relating to the criteria with the phrase "[f]or purposes of this section," indicates that application of the criteria is limited to that section. Thus, we agree with the Panel that sections 8–70–116 and 117 provide independent bases for determining whether a worker is in covered employment for purposes of the CESA.

¶ 25 In evaluating whether the twenty-one coordinators are subject to section 8–70–116, we first consider whether they are covered by the unemployment compensation laws of another state. Our review of the administrative record establishes that the coordinators lived in eleven different states: (1) Arizona (Light); (2) California (Boblen, Chrisman, Gindi, Hart, Krekler, Luly, Smith, and Schuler); (3) Connecticut (Peyrot); (4) Maryland (Duncan); (5) Minnesota (Lee and Ostrander); (6) New Mexico (Zanghi); (7) New York (Bourbeau); (8) North Carolina (Langley); (9) Oregon (Love and Meretksy); (10) Texas (Morrel and Williams); and (11) Vermont (Zilboorg).

¶ 26 All eleven of those states have enacted some form of the uniform definition of employment that contains language similar to section 8–70–117. *See* Ariz.Rev.Stat. Ann. § 23–615(A)(1) (2013); Cal. Unemp. Ins. Code § 602 (West 2013); Conn. Gen.Stat. Ann. § 31–222(a)(2) (West 2013); Md.Code Ann., Lab. & Empl. § 8–202(c), (d) (West 2013); Minn.Stat. Ann. § 268.035, subd. 12 (West 2013); N.M. Stat. Ann. § 51–1–42(F)(2) (2013); N.Y. Lab. Law § 511(2)-(5) (McKinney 2013); N.C. Gen.Stat. Ann. § 96–9.5 (West 2013); Or.Rev.Stat. Ann. § 657.035 (West 2013); Tex. Lab.Code Ann. § 201.043 (West 2013); Vt. Stat. Ann. Tit. 21, § 1301(6)(A)(ii)-(iv) (West 2013).

¶ 27 Thus, determination of whether services provided by an individual are "not covered under the unemployment compensation law of any other state" necessarily involves consideration of the uniform definition of employment. *See Iverson,* 449 N.W.2d at 359; *see also Telecommuters,* 33 Hofstra L.Rev. at 791.

### 6. The Out–Of–State Coordinators' Services Were "Localized" in their Respective States

¶ 28 Other jurisdictions, when applying the criteria in the uniform definition, have used the sequential four-part test set forth previously. *See Telecommuters,* 33 Hofstra L.Rev. at 791; *see also Iverson,* 449 N.W.2d at 359.

The first factor of this test involves consideration of the state where the claimant's provision of services is "localized." *See Telecommuters,* 33 Hofstra L.Rev. at 791. If the provision of services is "localized" in one state, then there is no need to consider the other three factors. *Id.*; *see also* § 8–70–117 (providing that "service shall be deemed to be localized within a state if the service is performed entirely within the state").

¶ 29 One court, which applied the uniform definition to similar facts, held that an individual was not in covered employment where the entire service of the individual was performed outside the state. *In re Allen,* 100 N.Y.2d 282, 763 N.Y.S.2d 237, 794 N.E.2d 18, 22 (N.Y.2003). In this case, an employee of a company located in New York telecommuted to work from Florida. *Id.* at 22. The court held that the employee, who worked exclusively in Florida, was not in covered employment in New York for unemployment compensation purposes because her work was "localized" in Florida. *Id.* at 22; *see also Story v. Reed, Roberts Assocs., Inc.,* 28 A.D.2d 1186, 284 N.Y.S.2d 556, 557 (N.Y.App. Div.1967) (services provided by a claimant who worked for a New York employer but performed services in Florida were "localized" in Florida and the claimant was not entitled to unemployment compensation benefits under New York law); *Logan–Cache Knitting Mills v. Indus. Comm'n,* 99 Utah 1, 102 P.2d 495, 497 (Utah 1940) (holding that the claimant's service was not "localized" in the state because there was no evidence that any service was performed in the state).

¶ 30 Similarly, another court held that when employees performed all their work within the state, the employment was "localized" in the state, and it constituted covered employment for unemployment compensation purposes. *See Commonwealth ex rel. Div. of Unemployment Ins. v. Goheen,* 372 S.W.2d 782, 784 (Ky.1963) (noting that the location of the employer's place of business is not material in determining whether the services performed for it are covered because, if the services rendered by an employee are localized in the state, there is no need for considering this factor or, indeed, the other criteria for coverage); *see also Vale v. Gaylords*

*Nat'l Corp.* 127 N.J.Super. 45, 316 A.2d 56, (N.J Super. Ct.App. Div.1974) (noting that where service is performed in more than one state, it is not "localized" in any one state); *Mallia,* 86 N.E.2d at 580 (stating that the "localization" test is determinative when an employee's entire service is localized in one state).

¶ 31 We also note that the Panel has made a similar argument with regard to whether employment is "localized" in this state. *See Laub,* 983 P.2d at 817–18 (in a case involving the application of section 8–70–118, C.R.S. 2012, which concerns a requirement that a nonprofit organization must employ at least four individuals, the Panel argued that the individuals' services must be performed, at least in part, in Colorado to be "localized" in the state and to constitute covered employment for unemployment compensation purposes).

¶ 32 Therefore, in light of the hearing officer's finding that the out-of-state coordinators lived and provided all their services out of state, we conclude that the coordinators' services were "localized" in the out-of-state jurisdictions. Accordingly, based on the definition of "employment" enacted in each state, the coordinators' services would have been covered under the unemployment compensation laws of the state where they worked and resided. *See Mallia,* 86 N.E.2d at 580; *see also Allen,* 763 N.Y.S.2d 237, 794 N.E.2d at 22 (physical presence determined where interstate telecommuter was "localized" for unemployment compensation benefits purposes). And, because the issue of whether the coordinators are covered by the unemployment compensation laws of another state is a legal one, we reject the Panel's argument that the lack of evidence on this issue requires a determination that the coordinators are in covered employment for purposes of section 8–70–116.

¶ 33 We also reject the Panel's argument that the absence of any action by any state to assume jurisdiction, demand taxes, maintain an experience rating, or make a determination regarding a coordinator's employment precluded a determination that these coordinators were covered by the unemployment compensation laws of another state. Section

8–70–116(1)(a) requires only that the services be "covered" under another state's unemployment compensation laws. It contains no additional requirement that the other state has to take administrative action to collect taxes or premiums, and we will not read that requirement into the statute. *See Boulder Cnty. Bd. of Commis. v. HealthSouth Corp.*, 246 P.3d 948, 954 (Colo.2011) (declining to "read into a statute language that does not exist").

### III. Conclusion

¶ 34 Therefore, we conclude that the Panel erred in determining that services provided by the out-of-state coordinators constituted covered employment in Colorado. Consequently, we also conclude that neither section 8–70–116 nor section 8–70–117 authorized the Division to impose taxes against the Foundation based on the out-of-state coordinator's provision of services to the Foundation exclusively from out of state. In light of this conclusion, we need not address the Foundation's remaining contentions on appeal.

¶ 35 The order is set aside, and the case is remanded to the Panel with instructions to enter an order reinstating the hearing officer's original decision that the out-of-state coordinators were not in covered employment in Colorado and that the Division improperly assessed taxes against the Foundation for these individuals.

JUDGE DAILEY and JUDGE J. JONES concur.