

# In the Missouri Court of Appeals
# Eastern District

## DIVISION TWO

| | | |
|---|---|---|
| REBECCA PHOENIX, | ) | No. ED106937 |
| | ) | |
| Appellant, | ) | Appeal from the Labor and |
| vs. | ) | Industrial Relations Commission |
| | ) | |
| SUMMER INSTITUTE OF LINGUISTICS | ) | |
| AND DIVISION OF EMPLOYMENT | ) | |
| SECURITY, | ) | Filed: |
| | ) | February 13, 2019 |
| Respondents. | ) | |

Rebecca Phoenix ("Claimant") appeals from the decision of the Labor and Industrial Relations Commission denying her claim for unemployment benefits. We reverse and remand.

Claimant was employed by Summer Institute of Linguistic, Incorporated ("SIL"). SIL is a 501(c)(3)[1] non-profit corporation located in Texas with approximately 75 employees, almost all of whom work in Texas. Claimant worked remotely from her home in Missouri and she was the only SIL employee working in this state. Claimant was terminated for budget reasons and filed for unemployment benefits in Texas, which were denied, and she then applied for unemployment benefits in Missouri. The Division of Employment Security denied her claim. The Division's position was, and is, that work for a non-profit corporation is only "employment" under Section 288.034.8 of the Missouri

---

[1] 26 U.S.C. Section 501(c)(3).

Employment Security Law ("MESL")[2] if the non-profit had four or more employees *in the State of Missouri*. The Appeals Tribunal and the Labor and Industrial Relations Commission affirmed the Division's denial, and this appeal follows. The sole issue on appeal is statutory construction of Section 288.034.8, though it is a somewhat long and winding road that leads to that provision.

The purpose of the MESL is expressly codified in Section 288.020, "to promote employment security both by increasing opportunities for jobs through the maintenance of a system of public employment offices and by providing for the payment of compensation to individuals in respect to their unemployment." We are mandated to construe the law "liberally to accomplish its purpose." Section 288.020. When an employee is terminated from employment through no fault of her own, she is entitled to benefits under the MESL if she is an "insured worker," defined in Section 288.030.1(22) as "a worker who has been paid wages for insured work." "Insured work" is defined in that same section as "employment in the service of an employer." Section 288.030.1(21). Thus, a claimant's entitlement to benefits is dependent on the meaning of "employer" and "employment." Which employers and what employment is covered by the MESL is set out in Sections 288.032 and 288.034 respectively.

The different entities that constitute "employers" are listed in Section 288.032.1(1)-(10). If deemed an "employer," the entity is required to report to the Division the wages it paid in a given period and to whom and contribute to the unemployment compensation fund; a claimant's wage credits are calculated based on these reports, which in turn determine the amount of benefits she is entitled to be paid from that fund. *See* Section

---

[2] All statutory references are to the Missouri Revised Statutes unless otherwise noted.

288.090, Section 288.030.1(9) and 8 C.S.R. 10-4.030. When Claimant filed her claim for benefits in this case, the Division initially determined she had no wage credits and then in a second determination found that SIL had filed no wage reports for her because it was an exempt non-profit, not subject to the obligations of the MESL.

As a non-profit organization, SIL would only be subject to the wage report and fund contribution obligations of the MESL if it met the test for "employer" in Section 288.032.1(4).[3] That section provides that "employer" means "[a]ny employing unit for which service in employment as defined in subsection 8 of section 288.034 is performed during the current or preceding calendar year." An "employing unit" is an entity that has "in its employ one or more individuals performing service for it within this state." Section 288.030.1(15). There is no dispute that Claimant performed work in Missouri, and therefore SIL had at least one individual performing service for it in this state and constituted an "employing unit." Having met that threshold, the question is whether her service was "in employment as defined in" Section 288.034.8, which describes the circumstances under which service for a non-profit corporation is considered "employment":

> Service performed by an individual in the employ of a corporation or any community chest, fund, or foundation organized and operated exclusively for religious, charitable, scientific, testing for public safety, literary, or educational purposes, or for the prevention of cruelty to children or animals, no part of the net earnings of which inures to the benefit of any private shareholder or individual, or other organization described in Section 501(c)(3) of the Internal Revenue Code which is exempt from income tax under Section 501(a) of that code *if the organization had four or more individuals in employment* for some portion of a day in each of twenty different weeks whether or not such weeks were consecutive within a

---

[3] An entity can also voluntarily elect to be covered by the MESL. *See* Section 288.080.3. The Division argues that this litigation could have been avoided if SIL had availed itself of that provision. SIL was under no obligation to make that election, and its decision not to voluntarily subject itself to the MESL has no relevance whatsoever to whether it meets the definition of employer in Section 288.032.1(4).

calendar year regardless of whether they were employed at the same moment of time shall be employment subject to this law.

Section 288.034.8 (emphasis added).

The Division has been—for years apparently—interpreting Section 288.034.8 as if the "four or more individuals in employment" had to be located in this state. Under this interpretation, the services Claimant performed for SIL were not "employment" because the SIL did not have four employees in Missouri and was not an "employer." As a result, Claimant was not an "insured worker" entitled to any "wage credits," and her request for benefits was denied. In affirming that denial, the Appeals Tribunal agreed that the MESL excluded from coverage employment for any non-profit with fewer than four employees in this state.[4]

"It is the duty of the courts to interpret and ascertain the legislative intent of the Missouri Employment Security Law." *Christensen v. American Food & Vending Services, Inc.*, 191 S.W.3d 88, 90 (Mo. App. E.D. 2006). The primary rule of statutory construction is to determine the legislature's intent from the statute's language, considering the words in their plain and ordinary meaning. *Id.* Where the language of the statute is ambiguous or where its plain meaning would lead to an illogical result, then this Court will look past the plain and ordinary meaning of a statute. *Higgins v. Missouri Division of Employment Security*, 167 S.W.3d 275, 282 (Mo. App. W.D. 2005). Statutory interpretation is an issue

---

[4] The Division's two determinations—the first, initially finding no wage credits on file for Claimant, and the second, after investigation into why she had no credits on file, finding she was not entitled to any because SIL was not an "employer" under the non-profit exemption in the MESL—were interdependent but proceeded through the administrative appeals process on two separate tracks. Thus, there were two separate Appeals Tribunal decisions and two Commission decisions affirming and adopting the Appeals Tribunal decisions. These Commission decisions were appealed jointly to this Court and the correctness of both depends on the same question: whether SIL is deemed an "employer" under Section 288.032.1(4) and Section 288.034.8. If it is, then it should have been filing wage reports generating wage credits for Claimant.

of law, and this Court does not defer to the Commission on issues of law. *Moore v. Swisher Mower & Machine Company, Inc.*, 49 S.W.3d 731, 738 (Mo. App. E.D. 2001).

The Division admits that the phrase "in this state" is not contained anywhere in Section 288.034.8. But the Division argues that the phrase "employment" in that section must be given the meaning that "employment" has elsewhere in the MESL. The Division cites to Section 288.034.2, which provides that employment "shall include an individual's entire service, performed within or both within and without this state" if it is "localized" here. Section 288.034.2; Section 288.034.4 (service is "localized" in this state if only incidental services are performed out of state). To be "in employment," the Division reasons, the four or more individuals in Section 288.034.8 must be similarly localized. It also cites to Section 288.030.1(15), requiring one employee "within this state" for an entity to be an "employing unit," and Section 288.100.1(1), authorizing closure of an employer's account when it ceases to have employment "in this state." In other words, according to the Division, whenever "employment" is used in the MESL, it refers only to employment that qualifies for coverage thereunder, which means only employment in this state. This is at least one reasonable interpretation of the language in the statute. But Claimant's interpretation is also reasonable: that because there is no language in Section 288.034.8 limiting "employment" to only that which is performed in this state, the plain meaning is that there is no such geographic limitation in that section.

Because the language of Section 288.034.8 could be reasonably interpreted in two different ways, it is ambiguous and we cannot glean the intent of the legislature from the words alone. *See generally In re Laclede Gas Company*, 417 S.W.3d 815, 820 (Mo. App. W.D. 2014). The Division suggests that its "administrative usage and interpretation"

resolves any ambiguity here and we should simply adopt its long-standing construction of this provision, citing *Springfield General Osteopathic Hospital v. Industrial Commission*, 538 S.W.2d 364, 370–71 (Mo. App. 1976). Although the agency's interpretation of the MESL is entitled to some—even considerable—weight, it is not conclusive or binding on this Court. *See Moore,* 49 S.W.3d at 738. We have given the Division's position the weight to which it is entitled here and conclude that, while it is reasonable on its face, it is nevertheless untenable. The statutory framework of and the context in which the MESL was enacted reveals the general purpose of the law and the specific problem that Section 288.034.8 was enacted to remedy. *See Doe v. St. Louis Community College*, 526 S.W.3d 329, 336–37 (Mo. App. E.D. 2017). Against the backdrop of that legislative history, it is clear that the General Assembly did not intend to impose a geographic limitation on the minimum size requirement on non-profits contained in Section 288.034.8.

The MESL is part of a cooperative federal-state scheme established by Congress in 1935 in response to the states' inability to provide public assistance to the unemployed during the Great Depression. *See generally St. Martin Evangelical Lutheran Church v. South Dakota,* 451 U.S. 772, 775 (1981). Congress encouraged the states to create their own unemployment insurance systems, and if a state plan complies with federal standards—now found in the Federal Unemployment Tax Act ("FUTA"), codified at 26 U.S.C. Section 3301, *et seq.*— the state is authorized to receive a federal grant to administer its plan. *California v. Grace Brethren Church*, 457 U.S. 393, 422 n.5 (1982). Employers are also allowed a credit on their federal tax for any contributions to a state unemployment compensation fund established under a federally approved plan. *See St. Martin Evangelical*, 451 U.S at 791 n.3. The "employment security acts of the several states and

6

their federal counterparts represent a cooperative effort by the states and the national government to carry out a common public purpose," and the judicial constructions of the federal legislation are "persuasive in construing our Employment Security Law." *Mid-Continent Aerial Sprayers, Inc. v. Industrial Commission, Division of Employment Security*, 420 S.W.2d 354, 358 (Mo. App. 1967).

Early in the unemployment benefits program, the states adopted varying definitions of "employment," which led to uncertainty as to which state was responsible for unemployment compensation for an individual performing services in more than one state. *Foundation for Human Enrichment v. Industrial Claim Appeals Office*, 339 P.3d 1046, 1048 (Colo. App. 2013) (citing Beverly Reyes, Note, *Telecommuters and Their Virtual Existence in the Unemployment World,* 33 Hofstra L. Rev. 785, 790 (2004)).  In response, federal agencies developed a uniform definition of "employment" based on where the individual's service is "localized," which was adopted by the states.  *Id*.  The uniform definition is based on two principles: (1) that all employment of an individual should be allocated to one state, not divided among the several states in which the individual might perform services, and only that one state should be responsible for paying benefits to the individual and (2) the state to which the individual's employment is allocated should be the one in which it is most likely that the individual will become unemployed and seek work.  *Id.*

Section 288.034.2 of the MESL is modeled on that uniform definition and sets forth the localization tests[5] to determine if Missouri is the state responsible for paying a

---

[5] Service meets these tests if it is localized in this state; or, if service is not localized in any state, but some is performed here and the base of operation is here; or, if the base of operation is not in any state where services are performed, but the individual resides here.  Section 288.034.2(1)-(2).

claimant's benefits. *SkillPath Seminars v. Summers*, 168 S.W.3d 465, 467-68 (Mo. App. W.D. 2005). Determining whether an individual's service is localized in Missouri under Section 288.034.2 is for the purpose of showing the claimant was engaged in "employment" here and therefore entitled to benefits from this state and not some other. Section 288.034.8, on the other hand, has nothing to do with which state is responsible for a particular claimant's benefits. It relates only to whether the claimant's service for a non-profit employer is exempt from coverage.

Prior to 1970, non-profit and other religious, educational and charitable organizations were exempt from the mandates of FUTA. Through a series of amendments in the 1970s intended to *expand* coverage, the states were required to cover non-profits of a certain size. *See St. Martin Evangelical,* 451 U.S. at 776-77; *see also generally* S. REP. NO. 91-752 (1970) *as reprinted in* 1970 U.S.C.C.A.N. 3606. Thus, service for non-profit organizations must be covered if "the total number of individuals who were employed by such organization in employment . . . was 4 or more." 26 U.S.C. Section 3309(c). In FUTA, there are no state-based geographic limitations on employment. *See* 26 U.S.C. Section 3306(c) (employment must be performed in United States or, if outside the country, then for an American employer). Thus, nothing in the federal mandate suggests that Congress intended for states to provide coverage to a local claimant only if the non-profit she worked for had at least three other employees in that same state.

In 1972, Missouri enacted Section 288.034.8, and other provisions, the express purpose of which was "to conform with the requirements of the Federal Employment Security Amendments of 1970." Section 288.340.12. Using language that mirrors the corresponding federal provision, the legislature expanded coverage to non-profits "if the

8

organization had four or more individuals in employment." Section 288.034.8. The General Assembly expressly stated that these provisions must be "interpreted and applied as to meet the requirements of such federal act as interpreted by the United States Department of Labor, and to secure to this state the full reimbursement[6] of the federal share of extended benefits paid under this law that are reimbursable under the federal act." Section 288.340.12.

Given the express purpose behind FUTA and the corresponding Missouri legislation, we conclude that the General Assembly could not have intended to impose a localization limitation on the minimum size requirement of Section 288.034.8. FUTA tells states to expand unemployment security benefits to all but the smallest non-profit employers and it has no geographic limitation on the individuals that count toward the "four or more" size requirement. "A State, of course, is free to expand its coverage beyond the federal minimum without jeopardizing its federal certification." *St. Martin Evangelical,* 451 U.S. at 791 n.3. But imposing a localization limitation in Section 288.034.8 would mean that fewer non-profits would be covered by the MESL than is required by the federal minimum. In other words, a non-profit like SIL with more than four individuals in employment in the United States would be within the minimum size imposed in FUTA, but under the Division's interpretation of the MESL, it would not have enough local employees to be covered. We must construe the statute in light of the purposes the legislature intended to accomplish and avoid interpretations that would defeat its purpose or lead to unreasonable or absurd results. *See generally State ex rel. Hawley v. City of St.*

---

[6] According to the chief counsel for the Division in 1972, "the state stood to lose over $145,000,000 in Federal funds which were earmarked for Missouri" if the state law did not comply with the 1970 FUTA amendments. Lloyd G. Hanley, *Recent Development in Employment Security,* 28 J. MO. BAR 276 (1972).

9

*Louis*, 531 S.W.3d 602, 607 (Mo. App. E.D. 2017). Under the Division's construction, the MESL would not provide the minimum coverage required by FUTA, jeopardizing federal certification and completely defeating the purpose for which it was enacted. An absurd and unreasonable result indeed.

Even if compliance with federal mandatory minimums was not a concern, we would still find that the more reasonable construction of Section 288.034.8 is that the legislature did *not* intend there to be any sort of geographical limitation on the minimum size requirement for non-profits. The General Assembly certainly knew how to impose such a limitation, as evident in other provisions where it qualified employment with the phrase "within this state" or "in this state." *See, e.g.*, Section 288.030.1(15) and Section 288.100.1(1), *supra*. Similarly, if the legislature had wanted the word "employment" in Section 288.034.8 to mean only localized service as defined in Section 288.034.2, it could have qualified that word with "as defined in" just as it did elsewhere in the statute. *See, e.g.,* Section 288.032(3)-(6); Section 288.037.1-.2; Section 288.034.7. From the obvious omission of any such language in Section 288.034.8, we can reasonably infer the General Assembly intended *not* to put any such geographic limitation therein and did not intend for "employment" to be cross-referenced with the definition of that term elsewhere in the MESL. *See generally McCoy v. The Hershewe Law Firm, P.C.*, 366 S.W.3d 586, 594 (Mo. App. W.D. 2012) (discussing statutory construction maxim *expressio unius est exclusio alterius*). Moreover, we must construe this statute liberally to achieve the remedial purpose of promoting employment security, which warrants a broader construction of "employment" than the one the Division suggests. *See* Section 288.020; *see also Missouri Association of Realtors v. Division of Employment Security*, 761 S.W.2d 660, 662 (Mo.

App. W.D. 1988); *George F. Deutschmann, Inc. v. Leiser*, 546 S.W.2d 560, 562 (Mo. App. 1977). Construed liberally, "four or more individuals in employment" in Section 288.034.8 includes any individuals employed by the non-profit without regard to where those services are performed.

A sister state in the cooperative federal-state unemployment benefits scheme has reached the same conclusion about identical statutory language. *Laub v. Industrial Claim Appeals Office of State of Colorado*, 983 P.2d 815 (Colo. App. 1999). Colorado has the same requirements for services performed by individuals for non-profit organizations, namely the non-profit must have "four or more individuals in employment." *Id*. at 816 (citing COLO.REV.STAT. Section 8-70-118) The Colorado court found this provision simply imposed a minimum size requirement: "[a]ll that is necessary to satisfy this requirement is that the non-profit organization have a minimum of four employees who perform services for it, regardless of the location of these employees or the place of their performance of these services." *Id*. at 817. Colorado also has the same localization requirement as we do, modeled on the uniform provision promulgated decades ago to clarify which state is responsible for benefits. *See id.* (citing COLO.REV.STAT. Section 8-70-117). Addressing the same argument the Division makes here—that to be considered "individuals in employment" and count toward the minimum size requirement for non-profits, the individuals must be localized within the state—the Colorado court found "no basis" for reading the localization limitation into the minimum size requirement. *Id*. Though its analysis was ostensibly on the plain language of the statute, the court reached this conclusion based on the history and underlying purpose of the localization requirement, namely "to avoid uncertainty as to which state is responsible for

unemployment compensation for an individual performing services in more than one state." *Id*. at 817-18. "In contrast, the minimum size requirement, which obviously refers to the non-profit employer, not the employee, is set forth in order to exclude small non-profit organizations from the obligations of the Act." *Id*. at 818. The court concluded that the localization provision is "irrelevant to the question addressed and answered" in the non-profit provision, namely "what size must a non-profit organization be to be included under the Act." *Id*.

We agree. The localization tests in Section 288.034.2 have a wholly disparate purpose from the minimum size test for non-profits in Section 288.034.8. The localization tests also focus on the employee seeking benefits, whereas the size test is focused on the employer's overall number of employees. Contrary to the Division's argument, there is nothing inconsistent about making an individual's entitlement to benefits in this state contingent on where her employment was performed, while at the same time, making a non-profit employer's obligations under the MESL contingent only on the size of its workforce. Nor does counting out-of-state workers in the total number of "individuals in employment" mean that those employees would qualify for coverage under the MESL, as the Division claims. If the non-profit has at least one employee in Missouri, it is an employing unit, and if it has at least three more employees, regardless of location, then it is an employer under the MESL. *See* Section 288.030.1(15), Section 288.032.1(4) and Section 288.034.8. If that one employee in Missouri seeks benefits, her service must be localized here to be deemed covered employment, and in turn for her to be considered an insured worker. *See* Section 288.034.2 and Section 288.030.1(21) and (22).

The Division also argues that, as a practical matter, it will be impossible to get information from other states about out-of-state individuals when investigating whether a non-profit meets the minimum size requirement. It contends the Division "lacks jurisdiction" to determine whether such individuals are "in employment" in another state and the Division does not receive any reports regarding out-of-state workers. We neither find this dire prediction to be true, nor does it support the idea that a different interpretation is required. First, the MESL calls explicitly for "cooperation with federal government and sister states," including the sharing of information between states:

> The administration of this law and of other state employment security, unemployment insurance and public employment service laws will be promoted by cooperation between this state and such other states in exchanging services and making available facilities and information. The division is authorized to make such investigations, secure and transmit such information, make available such services and facilities and exercise such of the other powers provided herein with respect to the administration of this law as it deems necessary or appropriate to facilitate the administration of any such employment security, unemployment insurance or public employment law and in like manner to accept and utilize information, services and facilities made available to this state by the agency charged with the administration of any other employment security, unemployment insurance or public employment service law.

Section 288.340.2. The director of the Division is quite literally mandated to administer the MESL in a way that meets the requirements of FUTA:

> In the administration of the provisions of this law, which are enacted to conform with the requirements of the Federal Employment Security Amendments of 1970, *the director shall take such action as may be necessary* to ensure that the provisions are so interpreted and applied as to meet the requirements of such federal act as interpreted by the United States Department of Labor, and to secure to this state the full reimbursement of the federal share of extended benefits paid under this law that are reimbursable under the federal act.

Section 288.340.12 (emphasis added). This broad mandate would seem to include the ability to investigate the number of a non-profit's out-of-state employees for purposes of

determining whether that non-profit meets the minimum size requirement in Section 288.034.8. The Division is simply not as hamstrung by our interpretation as it predicts. Second, the fact that there might be administrative hurdles to fulfilling the purpose of Section 288.034.8—complying with the federal mandate to expand coverage to all but the smallest non-profits—does not warrant an interpretation that would end up frustrating that purpose instead.

Based on the foregoing, we conclude that the Commission erred in its interpretation and application of Section 288.034.8 to the facts of this case. Because the record of the administrative proceedings shows undisputedly that SIL had well over four individuals in employment, it was an "employer" subject to the wage reporting and fund contribution requirements of the MESL. The agencies' contrary conclusion that because it did not have four employees in this state SIL was exempt led to the erroneous determinations that Claimant was not engaged in "employment" for an "employer," and therefore was not an "insured worker" entitled to "wage credits." Those determinations must be reversed. While SIL has not *yet* contributed to the compensation fund nor filed wage reports from which Claimant's wage credits can be generated—again because it was incorrectly deemed to be an exempt non-profit—the responsible agencies are tasked with ensuring that SIL performs its obligations under the MESL. This may be, again, an administrative hurdle to processing Claimant's request for benefits, but it does not absolve the responsible agencies from applying the correct interpretation of the law, as we have set forth in this opinion

The point on appeal is granted. We reverse both the Commission's decisions and remand for further proceedings consistent with this opinion.

14

ROBERT G. DOWD, JR., Judge

Philip M. Hess, P.J. and
Mary K. Hoff, J., concur.

15